IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

SENGMANY SAVATXATH,

                Plaintiff,               Civil Action No.
                                           3:12-CV-1492 (TJM/DEP)

    v.

CITY OF BINGHAMTON, et al.,

                Defendants.

_____

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF:

SENGMANY SAVATXATH, *Pro Se*
c/o 105 North Roosevelt Ave.
Endicott, NY 12821

FOR DEFENDANTS:

[NONE]


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT, RECOMMENDATION AND ORDER

Currently before me for review in connection with this matter is a

complaint filed by plaintiff Sengmany Savatxath, who is proceeding *pro se*,

accompanied by an application for leave to proceed *in forma pauperis*

("IFP").  For reasons set forth below, I am granting plaintiff's IFP application and recommending, with some exceptions, and without making any determination as to the merits of the plaintiff's claims, that he be permitted to proceed in this action.

I.      BACKGROUND

According to his complaint, plaintiff's claims stem from an incident occurring or about October 6, 2009.  Complaint (Dkt. No. 1) ¶ 25.  On that day, while plaintiff was driving an automobile owned by his ex-girlfriend in the Town of Dickenson, New York, defendant Michael Kelly, a Broome County Sheriff's Deputy, attempted to stop the vehicle.  *Id.* at ¶¶ 25-26. Believing that he had committed no traffic offense, plaintiff refused to stop, leading several law enforcement officers on a vehicle chase through Broome County before being forcibly stopped in the City of Binghamton after running over a spike strip, causing a front tire to deflate.  *Id.* at ¶¶ 26-32.

After the vehicle came to a stop, plaintiff was ordered to exit the vehicle but refused to comply.  Complaint (Dkt. No. 1) ¶¶ 37-41. Defendant Recks, another Broome County Deputy Sheriff, then broke the front passenger side window of the vehicle and dragged the plaintiff from

the car.  *Id.* at ¶¶ 33-42.  Plaintiff was subsequently assaulted, including

through use of a taser and with the aid of a police dog.  *Id.* at ¶¶ 44-49.

Once subdued, he was taken into custody and transported to the

headquarters of the Broome County Sheriff's Department, where he was

detained, searched, denied medical treatment, and forced to submit to a

drug recognition evaluation.  *Id.* at ¶¶ 55-76.  Plaintiff was then taken

before a Town of Dickenson Justice, who conducted an arraignment and

remanded him to the Broome County Correctional Facility.  *Id.* at ¶ 77.

In his complaint plaintiff has named, as defendants, the New York

State Police, the City of Binghamton, the Binghamton Police Department,

the Broome County Sheriff's Department, the Broome County Sheriff,

several identified law enforcement officers, and six "John Doe" defendants

of varying descriptions.  Plaintiff's complaint asserts claims pursuant to 42

U.S.C. § 1983, alleging the defendants' use of excessive force, failure to

intervene, deliberate indifference to his serious medical needs, the

conducting of an unlawful strip search, and deprivations of due process

and equal protection.

II.    DISCUSSION

    A.    IFP Application

After careful review of plaintiff's application, I find that he qualifies for IFP status. Plaintiff's request for permission to proceed *in forma pauperis* in this action is therefore granted.[1]

B.    Review of Plaintiff's Complaint

   1.    Standard of Review

Since I have found that plaintiff meets the financial criteria for commencing this case *in forma pauperis*, I must next consider the sufficiency of the allegations set forth in his complaint in light of 28 U.S.C. § 1915(e).  Section 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "(2) . . . the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  That section imposes a gatekeeping responsibility upon the court to determine whether an action may be properly maintained before permitting a plaintiff to proceed *in forma*

_____

   [1]    At the time this action was commenced, plaintiff was a New York State prison inmate, as is reflected on his IFP application.  However, he has since been released from the custody of the New York State Department of Corrections and Community Supervision.  *See* Dkt. No. 5.  Accordingly, the court will not require plaintiff to submit an inmate authorization form in connection with this IFP application.

4

*pauperis*. *See id*.

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served, and the parties have had an opportunity to address the sufficiency of plaintiff's allegations. *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). There is, nonetheless, an obligation on the part of the court to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See Fitzgerald v. First East Seventh St. Tenants Corp*., 221 F.3d 362, 363 (2d Cir. 2000) (a district court may dismiss frivolous complaint *sua sponte* notwithstanding fact the plaintiff has paid statutory filing fee); *Wachtler v. County of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994) (a district court has the power to dismiss case *sua sponte* for failure to state a claim).

"Legal frivolity . . . occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.'" *Aguilar v. United States*, Nos. 3:99-MC-304,

3:99-MC-408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (Burns J.)

(quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d

Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325, 109 S. Ct.

1827, 1831 (1989); *Pino v. Ryan*, 49 F.3d. 51, 53 (2d Cir.1995) ("[T]he

decision that a complaint is based on an indisputably meritless legal

theory, for the purposes of dismissal under section 1915(d), may be based

upon a defense that appears on the face of the complaint.").[2]

> ### 2. Application of Governing Legal Principles to Plaintiff's Claims

> #### a. The New York State Defendants

One of the defendants named by the plaintiff is the New York State

Police.  Also named are one identified and four "John Doe" New York

State Troopers, sued both as individuals and in their official capacities.

The Eleventh Amendment protects a state against suits brought in

federal court by citizens of that state, regardless of the nature of the relief

sought.  *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S. Ct. 3057, 3057-58

(1978).  This absolute immunity which states enjoy under the Eleventh

Amendment extends to both state agencies and state officials sued in

---

[2]     Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

their official capacities, when the essence of the claim involved is one against a state as the real party in interest. *Richards v. State of New York Appellate Division, Second Dep't,* 597 F. Supp. 689, 691 (E.D.N.Y. 1984), (citing *Pugh and Cory v. White*, 457 U.S. 85, 89-91 102 S. Ct. 2325, 2328-2329 (1982)). To the extent that a state official is sued for damages in his or her official capacity the official is entitled to invoke the Eleventh Amendment immunity belonging to the state. *Kentucky v. Graham*, 473 U.S. 159, 166-67, 105 S. Ct. 3099, 3105 (1985); *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 361 (1991).

Plaintiff's claims against the New York State Police Department are precluded by the Eleventh Amendment. *Price v. Goord*, No. 9:10–CV–00181, 2011 WL 1630727, at \*2 (N.D.N.Y. Mar. 10, 2011) (Lowe, M.J.), *report and recommendation adopted*, 2011 WL 1630174 (N.D.N.Y. Apr 29, 2011) (Kahn, J.) In addition, because his section 1983 claims brought against the individual named and unidentified New York State Troopers in their official capacities are, in reality, claims against the State of New York, they represent the sort of claims against which the Eleventh Amendment protects, and are also therefore subject to dismissal. *Daisernia v. State of New York*, 582 F. Supp. 792, 798-99

(N.D.N.Y. 1984) (McCurn, J.).  I therefore recommend dismissal of all claims in this action against the New York State Police Department, and those asserted against defendants Trooper Schmitz and the four "John Doe" New York State Trooper defendants in their official capacities.

b.     The Departmental Defendants

Plaintiff's complaint also names the Binghamton Police Department and the Broome County Sheriff's Department as defendants.  "Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence.  Therefore, municipal departments . . . are not amenable to suit and no claims lie directly against [them]."  *Hoisington v. Cnty. of Sullivan*, 55 F. Supp.2d 212, 214 (S.D.N.Y. 1999) (citations omitted).  As departments of their respective municipalities, the City of Binghamton Police Department and the Broome County Sheriff's Department are not properly named as defendants in this action, and plaintiff's claims against them should also be dismissed.[3]

3.     Nature of Dismissal

As can be seen, I have recommended that certain of plaintiff's

---

[3]     Plaintiff's claims will not be significantly affected by this ruling since both the City of Binghamton and the Broome County Sheriff are also named as defendants in his complaint.

claims be dismissed.  The next issue to be addressed is whether the

plaintiff should be given an opportunity to cure the deficiencies discerned

through amendment of his complaint.

Ordinarily, a court should not dismiss a complaint filed by a *pro se*

litigant, in whole or in part, without granting leave to amend at least once if

there is any indication that a valid claim might be stated.  *Branum v. Clark*,

927 F.2d 698, 704-05 (2d Cir.1991) (emphasis added); *see also* Fed. R.

Civ. P. 15(a) (leave to amend "shall be freely given when justice so

requires"); *see also Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp.

986, 1003 (E.D.N.Y.1995) (leave to replead granted where court could not

say that under no circumstances would proposed claims provide a basis

for relief).  However, an opportunity to amend is not required where "the

problem with [plaintiff's] causes of action is substantive" such that "[b]etter

pleading will not cure it""  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir.

2000) (finding that repleading would be futile) (citation omitted); *see also*

*Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)

("Of course, where a plaintiff is unable to allege any fact sufficient to

support its claim, a complaint should be dismissed with prejudice.")

(affirming, in part, dismissal of claim with prejudice) (citation omitted); *cf.*

*Gomez v. USAA Fed. Sav. Bank* , 171 F.3d 794, 796 (2d Cir. 1999)

(granting leave to amend is appropriate "unless the court can rule out any

possibility, however unlikely it might be, that an amended complaint would

succeed in stating a claim.").  Stated differently, "[w]here it appears that

granting leave to amend is unlikely to be productive, . . . it is not an abuse

of discretion to deny leave to amend."  *Ruffolo v. Oppenheimer & Co.*, 987

F.2d 129, 131 (2d Cir. 1993) (citations omitted); *accord Brown v. Peters*,

95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler,

J.) ("[T]he court need not grant leave to amend where it appears that

amendment would prove to be unproductive or futile.") (citation omitted),

*aff'd*, 175 F.3d 1007 (2d Cir. 1999).

It is clear that even if afforded leave to replead, plaintiff would be

unable to state cognizable claims against the State of New York, the New

York State Trooper defendants in their official capacities, the City of

Binghamton Police Department, and the Broome County Sheriff's

Department.  The claims against these individuals should therefore be

dismissed, with prejudice and without leave to replead.

### 4.   Identification of John Doe Defendants

The court notes that plaintiff has asserted claims against several

10

"John Doe" defendants in this action. He is hereby advised that service cannot be effected on a "John Doe" defendant. In the event that plaintiff wishes to pursue claims against these defendants, he must therefore take reasonable steps to ascertain their identities, through discovery or otherwise. Moreover, in order to pursue his claims against them, upon learning of the identities of these individuals he must seek leave to amend his pleadings and add the properly named defendants as parties, pursuant to Rules 15 and 21 of the Federal Rules of Civil Procedure. In the event that plaintiff fails to ascertain the identity of any "John Doe" defendant in order to permit the timely service of process, his claims against them will be dismissed.

III.    SUMMARY AND CONCLUSION

Based upon the court's review of plaintiff's complaint and accompanying IFP application, it is therefore hereby

ORDERED that plaintiff's application for leave to proceed *in forma pauperis* in this action (Dkt. No. 2) is GRANTED; and it is further respectfully

RECOMMENDED that plaintiff's claims against New York City Police Department, the Binghamton Police Department, the Broome County

Sheriff's Department, New York State Police, defendant Schmitz and the four "John Doe" New York State Troopers, in their official capacities be DISMISSED, with prejudice; and it is further

RECOMMENDED that plaintiff's complaint (Dkt. No. 1) otherwise be accepted for filing and that, upon receipt from plaintiff of the documents required for service of process, the clerk be directed to issue summonses and forward them, together with copies of plaintiff's complaint and a General Order no. 25 packet which sets forth this district's civil case management plan requirements, be forwarded to the United States Marshal for service upon the defendants, and that in addition the clerk respectfully be directed to forward a copy of the summons and complaint in this action, by mail, to the corporation counsel for the City of Binghamton and the Broome County Attorney's Office, together with a copy of this report and recommendation and any subsequent order issued by the court; and it is further hereby

RECOMMENDED that plaintiff be advised that all pleadings, motions and other documents related to this action must be filed with the clerk of the United States District Court, Northern District of New York, Seventh Floor, Federal Building, 100 S. Clinton Street, Syracuse, NY

13261-7367, and that any documents sent by any party to the court or the clerk must be accompanied by a certificate showing that a true and correct copy of that document was mailed to all opposing parties or their counsel, and that plaintiff must promptly notify the clerk's office and all parties or counsel of any change in this address, and that his failure to do so will result in dismissal of the action.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:     January 24, 2013
           Syracuse, NY

David E. Peebles
U.S. Magistrate Judge



Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

(Cite as: 1999 WL 1067841 (D.Conn.))



Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Francisco AGUILAR, Plaintiff,
v.
UNITED STATES OF AMERICA, Defendant.
Nos. 3:99–MC–304 (EBB), 3:99–MC–408 (EBB).

Nov. 8, 1999.
*Dismissal of Plaintiff's Complaints*

BURNS, Senior J.

**\*1** Francisco Aguilar, pro se, seeks leave to proceed in forma pauperis ("IFP") to press two meritless complaints against the government, which is prosecuting related civil forfeiture actions against his properties. Although Aguilar is otherwise financially eligible, the court dismisses these complaints sua sponte pursuant to 28 U.S.C. § 1915(e)(2)(B) because the purported claims are frivolous, baseless and irremediable.

*Background*

Would-be plaintiff Aguilar is no stranger to this court. He is currently serving a forty-year sentence for drug trafficking at the federal penitentiary in Leavenworth, Kansas. *See United States v. Tracy,* 12 F.3d 1186, 1189 (2d Cir.1993) (affirming conviction and sentence). In connection with his conviction for narcotics offenses, the government filed civil forfeiture actions pursuant to 21 U.S.C. § 881(a) in 1990 and 1991 against four of Aguilar's Connecticut properties, which have since been sold. With the help of CJA-appointed counsel, Aguilar has vigorously defended each of these four actions, three of which remain pending before this court, and are scheduled for trial in January 2000.[FN1]

> FN1. *See United States v. One Parcel Of Property Located At 2030–32 Main St.,* No. 5:90–cv–544(EBB) (pending); *United States v. One Parcel Of Property Located At 8 Drumlin Rd.,* No. 5:90–cv–545 (EBB) (pending); *United States v. One Parcel Of Property Located At*

> *2034–38 Main St.,* No. 5:90–cv–546(EBB) (pending); *see also United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 5:91–cv–158(EBB) (closed).

Now Aguilar seeks to take the offensive by filing these purported claims against the government, and serving the current property owners as well as the Assistant United States Attorney who is prosecuting the related forfeiture cases. This court denied without prejudice Aguilar's initial complaint, which was erroneously captioned "United States v. One Parcel Of Property Located At 414 Kings Hwy.," one of the cases already docketed and then pending. *See* Order of June 15, 1999. Upon refiling an amended complaint (the "Amended Complaint") with the appropriate caption, Aguilar also filed a second complaint (the "Second Complaint"), seeking the same relief and asserting essentially the same claims against the government for bringing the other three forfeiture cases. The clerk returned these pleadings because Aguilar failed to complete the IFP forms. *See* Order of August 25, 1999. After Aguilar cured these pleading deficiencies, miscellaneous docket numbers were assigned to the complaints.

In Aguilar's Amended Complaint—the one originally filed against his own property at 414 Kings Highway—Aguilar seeks return of the property, compensatory damages and $100,000,000 in punitive damages "to deter the United States of America from committing a similar Abuse of Power." Aguilar pleads his case in four "Articles," asserting sundry state and federal "constitutional" claims, including conversion, false pretenses, mail fraud, and breach of fiduciary duty. The Amended Complaint also suggests an allegation that the government falsified and deliberately omitted known material facts from its probable cause affidavit in "disregard" of 19 U.S.C. § 1615, the statute outlining the burden of proof in administrative forfeiture proceedings.

The Second Complaint—the one related to the government's seizure of the other three properties—seeks similar equitable and monetary relief, including return of

Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

(Cite as: 1999 WL 1067841 (D.Conn.))

the properties, compensation for "suffering," "usurpation," denial of his use and enjoyment of the properties and lost rents, and one billion dollars in punitive damages. Liberally construed, the Second Complaint simply repeats the claims of the Amended Complaint except for one additional allegation: that Aguilar was entitled to, and did not receive, a hearing prior to the seizure and sale of his properties.

*Discussion*

A. *§ 1915(e)(2)(B) Standards*

**\*2** The Prisoner Litigation Reform Act ("PLRA") mandates dismissal of an IFP action if it: "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B) (as amended in 1996). Prior to the adoption of the PLRA, district courts had discretion to dismiss frivolous actions; now they are required to do so. *See* Pub.L. 104–134, 110 Stat. 1321 (1996) (making dismissal of frivolous actions mandatory, and also requiring dismissal for failing to state a claim or seeking damages from an immune defendant). Because Aguilar's claims qualify for dismissal under all three of these prongs, the standards for each are set out in turn.

1. *Frivolous or Malicious*

A complaint is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1831–32, 104 L.Ed.2d 338 (1989) (interpreting § 1915(d), later redesignated as § 1915(e)(2)(B)(i), to preclude "not only the inarguable legal conclusion, but also the fanciful factual allegation"). Factual frivolity occurs where "the 'factual contentions are clearly baseless,' such as when allegations are the product of delusion or fantasy." *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998) (quoting *Neitzke,* 490 U.S. at 327, 109 S.Ct. at 1833). Legal frivolity, by contrast, occurs where "the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Livingston,* 141 F.3d at 327 (internal quotes

and citation omitted); *see also Tapia–Ortiz v. Winter,* 185 F.3d 8, 11 (2d Cir.1999) (upholding dismissal as frivolous where "[t]he complaint's conclusory, vague, and general allegations ... d[id] not [ ] suffice to establish" plaintiff's claims).

In addition to frivolous claims, the court must also dismiss any malicious claims, i.e., where "[t]he manifest purpose of appellant's complaint [i]s not to rectify any cognizable harm, but only to harass and disparage." *Tapia–Ortiz,* 185 F.3d at 11.

2. *Failure To State A Claim*

An IFP action must also be dismissed sua sponte if it fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *see also Star v. Burlington Police Dep't,* 189 F.3d 462, 1999 WL 710235 (2d Cir.1999) (summarily affirming dismissal made pursuant to § 1915(e)(2)(B)(ii) of purported due process challenge that failed to state a claim). As in a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a § 1915(e)(2)(B)(ii) dismissal is warranted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

**\*3** Pro se complaints, such as these, however, must be read broadly, *see Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam), and may not be dismissed "simply because the court finds the plaintiff's allegations unlikely." *Denton v. Hernandez,* 504 U.S. 25, 33, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1982) (construing pre-PLRA complaint as frivolous). Therefore,

a pro se plaintiff who is proceeding in forma pauperis should be afforded the same opportunity as a pro se fee-paid plaintiff to amend his complaint prior to its dismissal for failure to state a claim [under § 1915(e)(2)(B)(ii) ], unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim.

*Gomez v. USAA Federal Sav. Bank,* 171 F.3d 794, 796 (2d Cir.1999) (per curiam) (vacating § 1915(e)(2)(B)(ii) dismissal where "the district court did

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

(Cite as: 1999 WL 1067841 (D.Conn.))

not give th[e] pro se litigant an opportunity to amend his complaint, and because [the court] cannot rule out the possibility that such an amendment will result in a claim being successfully pleaded").

### 3. *Relief Against An Immune Defendant*

Dismissal of an IFP case is also required where plaintiff seeks monetary damages against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(iii); *see also,* *Spencer v. Doe,* 139 F.3d 107, 111 (2d Cir.1998) (affirming dismissal pursuant to § 1915(e)(2)(B)(iii) of official-capacity claims in § 1983 civil rights action because "the Eleventh Amendment immunizes state officials sued for damages in their official capacity"). Here, even if Aguilar's claims had any merit, the complaints must be dismissed nevertheless because each seeks monetary damages from the United States, which is immune from such relief. *See Presidential Gardens Assocs. v. United States,* 175 F.3d 132, 139 (2d Cir.1999) (noting "[t]he sovereign immunity of the United States may only be waived by federal statute").

### B. *Dismissal Standards Applied*

Aguilar's complaints are devoid of any arguable basis in law or fact. Most of his factual allegations—to the extent they are even comprehensible—are conclusory, vague and baseless. For example, he purports to allege: "The United States of America has misused its power against the Francisco Aguilar's Intangible Rights." (Amended Complaint at 2); and "The United States of America overpassed its bound of its authority and make a tyrannic use of its powers." (Second Complaint at 4). Even the Second Circuit has recognized Aguilar's prior handiwork to be "so indisputably lacking in merit as to be frivolous within the meaning of 28 U.S.C. § 1915(e)." *See United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 97–6004 (2d Cir. April 23, 1997) (mandate [Doc. No. 167] dismissing appeal of Aguilar's motion to enjoin state default proceedings).

Only two allegations asserted by Aguilar are even arguably actionable: the lack-of-probable-cause argument in the Amended Complaint and the due process claim in the Second Complaint. Both of these, however, must be dismissed because each fails to state a claim for which relief may be granted.

### 1. *Probable Cause*

**\*4** The one potentially cogent legal claim that can be derived from a liberal reading of the Amended Complaint has already been conclusively decided by the court and is therefore barred from relitigation. *See United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 5:91–cv–158 (denying lack-of-probable-cause argument in motion to dismiss [Doc. No. 64] in 1993, and in motions for summary judgment [Doc. Nos. 55, 96] in 1996). Here again, Aguilar reiterates his allegation that the government's affidavit in support of probable cause was tainted because it failed to disclose that the 414 Kings Highway property was subject to a mortgage held by People's Bank, and therefore could not have been purchased with funds traceable to drug sales.

After the government voluntarily dismissed that forfeiture action, this court initially ordered the sale proceeds of the property disbursed to Aguilar. *See id.,* Order of Oct. 25, 1996 [Doc. No. 151]. The bank appealed the order and, during the pendency of the appeal, secured a default judgment in state court against Aguilar. *See People's Bank v. Aguilar,* No. CV–96–0337761–S (Conn.Super.Ct.1997). On the Bank's appeal from this court's disbursal of proceeds to Aguilar, the Second Circuit reversed and remanded. *See United States v. One Parcel Of Property Located At 414 Kings Hwy.,* 128 F.3d 125, 128 (2d Cir.1997). On remand, in accordance with the Second Circuit mandate, this court disbursed the proceeds from the sale of 414 Kings Highway to the bank in partial satisfaction of Aguilar's debt owed on the defaulted mortgage. *See United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 5:91–cv–158, 1999 WL 301704 (D.Conn. May 11, 1999).

Because the lack-of-probable-cause claim, perfunctorily adverted to in Aguilar's otherwise meritless Amended Complaint, has already been addressed in the *414 Kings Highway* forfeiture case, the court will not consider it again. As such, it must be dismissed because it fails to state a claim for which this court could grant further relief.

### 2. *Due Process*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

(Cite as: 1999 WL 1067841 (D.Conn.))

In addition to his now-stale probable cause allegation about 414 Kings Highway, Aguilar claims in the Second Complaint that he was wrongfully denied a hearing prior to the seizure and sale of the other three properties. However, the constitutional right to a preseizure hearing in civil forfeiture proceedings was not recognized until 1993, two years after the seizure in this case. *See* United States v. James Daniel Good Real Property, 510 U.S. 43, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993) (holding that Fifth Amendment Due Process protections apply to civil forfeiture proceedings against real property). Even if such due process protections applied retroactively, Aguilar's challenge to the sale of the properties would lack merit because exigent circumstances required their interlocutory sale.

In civil forfeiture proceedings "[u]nless exigent circumstances are present, the Due Process Clause requires the Government to afford notice and a meaningful opportunity to be heard before seizing real property subject to civil forfeiture." *Id.* at 62, 114 S.Ct. at 505; *see also* United States v. One Parcel Of Property Located At 194 Quaker Farms Rd., 85 F.3d 985, 988 (2d Cir.1996) ("[a]bsent exigent circumstances, a hearing, with notice to record owners, is held before seizure."). "To establish exigent circumstances, the Government must show that less restrictive measures—i.e., a lis pendens, restraining order, or bond—would not suffice to protect the Government's interest in preventing the sale, destruction, or continued unlawful use of the real property." *Id.* at 62, 114 S.Ct. at 505.

**\*5** Aguilar's properties addressed in the Second Complaint were seized because there was probable cause that each had been used to facilitate the offenses for which he was convicted. *See* 21 U.S.C. § 881(a)(7) (1999). This civil forfeiture statute authorizes interlocutory sale of seized properties by two methods, which are incorporated by reference into the statute. *See* 21 U.S.C. § 881(b) (authorizing sale of property subject to civil forfeiture upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims; 21 U.S.C. § 881(d) (authorizing seizure and summary sale governed by the customs laws codified in the Tariff Act of 1930, 19 U.S.C. §§ 1602–1619). Though the source of authority differs, the standards for sale under each are virtually indistinguishable.

Rule E(9)(b) of the Maritime Rules permits the interlocutory sale of seized property if such property

is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action, or if the expenses of keeping the property is [sic] excessive or disproportionate, or if there is unreasonable delay in securing the release of property....

Supplemental Rule for Certain Admiralty and Maritime Claims E(9)(b). Section 1612(a) of the customs laws, by contrast, provides for seizure and summary sale whenever it appears that such property

is liable to perish or to waste or to be greatly reduced in value by keeping, or that the expense of keeping the same is disproportionate to the value thereof....

19 U.S.C. § 1612(a) (1999).

Here, the Chief Deputy United States Marshal certified that the properties located at both 2030–32 Main St., Bridgeport (No. 5:90–cv–544), and 8 Drumlin Rd., Westport (No. 5:90–cv–545), were abandoned and therefore subject to vandalism, deterioration and depreciation. *See* 2/20/91 Declaration in Support of Motion for Interlocutory Sale [Doc. Nos. 28 (5:90–cv–544), 31 (5:90–cv–545) ] at ¶¶ 4, 5. The marshal also certified that the mortgage obligations exceeded by over $ 1,000 per month the rental income of the 2034–38 Main St., Bridgeport (No. 5:90–cv–546), property, which was several months in arrears and had little or no equity. *See* 2/21/90 Declaration in Support of Motion for Interlocutory Sale [Doc. No. 27 (5:90–cv–546) ] at ¶ 4. This court found these reasons sufficiently exigent to order the interlocutory sales. *See* 8/1/90 Order for an Interlocutory Sale [Doc. Nos. 34 (5:90–cv–544), 50 (5:90–cv–545), 31 (5:90–cv–546)]. Interlocutory sale was thus warranted under both Rule E(9)(b) and § 1612(a) because the two abandoned properties were liable to deteriorate or lose value and the mortgage liabilities of the rented property were disproportionate in comparison to its value. *Cf.* United States v. Esposito, 970 F.2d 1156, 1161 (2d Cir.1992) (vacating order of interlocutory sale of forfeited home where "there was no finding that t[he amount expended for maintenance and repairs] was

Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

(Cite as: 1999 WL 1067841 (D.Conn.))

excessive or disproportionate").

**\*6** Aguilar's claim that he was wrongfully denied an opportunity to be heard prior to the sale of his properties is therefore not a cognizable due process challenge because the exigency of the properties' abandonment and disproportionate cost of upkeep required their interlocutory sale. Thus, sua sponte dismissal is warranted because Aguilar's due process claim fails to state a remediable cause of action.

3. *Other Claims*

The remainder of Aguilar's claims are frivolous and can be disposed of readily. To the extent Aguilar's claim invoking 19 U.S.C. § 1615 can be construed as challenging the constitutionality of shifting the burden to the claimant upon the government's showing of probable cause, the Second Circuit has "h[e]ld that it does not violate due process to place the burden of proving an innocent owner affirmative defense on the claimant." *194 Quaker Farms Rd.,* 85 F.3d at 987. In addition, the tort claims for false pretenses and conversion are not actionable as these are intentional torts to which the limited waiver of sovereign immunity of the Federal Tort Claims Act ("FTCA") is inapplicable. *See* 28 U.S.C. § 2680(h); *see also Bernard v. United States,* 25 F.3d 98, 104 (2d Cir.1994) ("the FTCA does not authorize suits for intentional torts based on the actions of Government prosecutors"). Furthermore, because the United States government is not a fiduciary and owes no associated duties to Aguilar, his breach of fiduciary duty allegation against the government fails to state a claim. Finally, Aguilar also fails to state a valid mail fraud claim as that criminal code provision, 18 U.S.C. § 1341, may only be prosecuted by the government, not against it.

*Conclusion*

For the foregoing reasons, Aguilar's complaints [Nos. 3:99–mc–304 and 3:99–mc–408] are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) because they present frivolous allegations, none of which state a cognizable claim, and seek monetary relief from an immune defendant. Because the court cannot definitively rule out the possibility that amendment to the pleadings might result in an actionable claim, *see Gomez,* 171 F.3d at 796,

these dismissals are made without prejudice and may be replead after the conclusion of the related forfeiture proceedings.

D.Conn.,1999.

Aguilar v. U.S.

Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

END OF DOCUMENT



Not Reported in F.Supp.2d, 2011 WL 1630727 (N.D.N.Y.)

(Cite as: 2011 WL 1630727 (N.D.N.Y.))

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
George Moran PRICE, Plaintiff,
v.
Glenn GOORD; Henry Lemons, Jr., Defendants.
No. 9:10–CV–00181 (LEK/GHL).

March 10, 2011.
George Moran Price, Youngstown, OH, pro se.

Hon. Eric T. Schneiderman, Attorney General for the State of New York, Justin C. Levin, Esq., Assistant Attorney General, of Counsel, Albany, NY, for Defendants.

***REPORT–RECOMMENDATION***[FN1]

FN1. My thanks to Anas Saleh, a third-year student at Syracuse University 1 College of Law, for his assistance in researching and drafting this Report–Recommendation.

GEORGE H. LOWE, United States Magistrate Judge.

**\*1** This *pro se* prisoner civil rights action, filed pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Lawrence E. Khan, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c) of the Local Rules of Practice for this Court. Plaintiff George Moran Price ("Plaintiff") alleges that the New York State Department of Correctional Services ("DOCS") violated his constitutional rights when it administratively extended Plaintiff's post release supervision ("PRS") term. (Dkt. No. 1 at 5.)[FN2] Plaintiff further alleges that the New York State Division of Parole (the "Division") was negligent in calculating his PRS sentence. *Id.* at 5–6.

FN2. In citations to the complaint (Dkt. No. 1), page numbers refer to those assigned by the Court's electronic filing system.

Currently pending is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (Dkt. No. 15.) Plaintiff has opposed this motion. (Dkt. No. 20.) For the reasons discussed below, I recommend that Defendants' motion to dismiss be granted with leave to amend.

**I. FACTUAL AND PROCEDURAL SUMMARY**

On December 14, 2001, Plaintiff was sentenced to imprisonment for a five year determinate term and two and a half years of PRS. (Dkt. No. 1 at 11.)[FN3] Plaintiff alleges that on or about January 10, 2002, DOCS administratively added an additional two and a half years to his PRS term. *Id.* He claims that DOCS' action extended the maximum expiration date of his PRS term from July 1, 2008 to December 29, 2010. *Id.* at 12. He further claims that on June 29, 2008, the Division "failed to discharge [P]laintiff from supervision upon expiration of [the] sentence." *Id.* at 5. An attachment to the complaint shows that on August 19, 2008, the Division issued a warrant to detain Plaintiff for a PRS violation. *Id.* at 16. Plaintiff alleges that on September 5, 2008, he was arrested and detained. *Id.* at 5–6. He claims that he served jail time after the arrest and suffered twelve months and thirteen days of undue hardship and emotional duress. *Id.* at 6.

FN3. Plaintiff's complaint consists of a seven page form and fifteen pages of attachments. The Court will consider the facts alleged in the attachments. In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated in the complaint by reference. *Rothman v. Gregor,* 220 F.3d 81, 88 (2d Cir.2000) (citing *Cosmas v. Hassett,* 886 F.2d 8, 13 (2d Cir.1989)).

On March 9, 2009, Plaintiff filed a writ of habeas corpus with the New York State Supreme Court in Niagara County. *Id.* at 5, 9. Plaintiff argued that his detention was

Not Reported in F.Supp.2d, 2011 WL 1630727 (N.D.N.Y.)

(Cite as: 2011 WL 1630727 (N.D.N.Y.))

illegal because DOCS added more PRS time than the sentencing judge had imposed. *Id.* at 11. The complaint alleges that the excess PRS term was vacated. *Id.* at 5, 6. An attachment to the complaint shows that on July 20, 2009, the Division sent a letter to Niagara County Jail confirming that Plaintiff was to be discharged pursuant to court order. *Id.* at 22.

Plaintiff names as defendants Glenn Goord (Commissioner of DOCS) and Henry Lemons Jr., (Interim Chairman of the Division) in their official capacities. *Id.* at 2. Defendants are listed in the complaint's caption and parties section; however, Plaintiff does not mention either defendant further in the complaint or attachments. *See id.* at 1–22. The complaint requests $250,000 from each defendant. *Id.* at 6.

**\*2** Defendants now move to dismiss the complaint. (Dkt. No. 15.) Plaintiff has opposed the motion. (Dkt. No. 20.)

## II. LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

Defendants have moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Dkt. No. 15–1 at 1.) Motions brought under Rule 12(b)(1) and 12(b)(6) are analyzed under substantively the same standard. *See Lerner v. Fleet Bank, N.A.,* 318 F.3d 113, 128 (2d Cir.), *cert. denied,* 540 U.S. 1012 (2003). Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint on the ground that the complaint fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)) (emphasis added). "[D]etermining whether a complaint states a plausible claim for relief ... requir[es] the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not shown-that the pleader is entitled to relief." *Id.* at 1950 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor ." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009). However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* at 1949.

## III. ANALYSIS

Defendants argue that: (A) the Eleventh Amendment bars claims against DOCS and the Division; (B) Plaintiff has failed to allege that Defendants were personally involved in the alleged constitutional violations; and (C) Plaintiff's first claim, that DOCS violated his due process rights by administratively adding two and a half years to his PRS sentence, is time barred. (Dkt. No. 15–1.)

### A. Eleventh Amendment

Defendants argue that to the extent the complaint contains allegations against DOCS and the Division, the Eleventh Amendment bars these claims. (Dkt. No. 15 at 2–3.) Defendants are correct, but DOCS and the Division are not named defendants. *See* (Dkt. No. 1 at 2.) However, Eleventh Amendment immunity also bars Plaintiff's claims against Defendants Goord and Lemons, state officials being sued in their official capacities, for monetary damages.

**\*3** The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." *See* U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana,* 134 U.S. 1, 10–21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho,* 521

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 1630727 (N.D.N.Y.)

(Cite as: 2011 WL 1630727 (N.D.N.Y.))

U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984).

In addition, the Eleventh Amendment bars suits for damages against state officials acting in their official capacities.[FN4] All DOCS employees are state officials for the purposes of the Eleventh Amendment. *See, e.g., Davis v. New York,* 316 F.3d 93, 101 (2d Cir.2002); *Tolliver v. N.Y. State Correctional Officers,* No. 99 CIV 9555, 2000 WL 1154311, *2 (S.D.N.Y. Aug. 14, 2000) ("All of the defendants in this case are state officials because they are employees of the New York State Department of Correctional Services.").[FN5] The New York State Division of Parole has been found to have Eleventh Amendment immunity. *See Heba v. N.Y. State Div. of Parole,* 537 F.Supp.2d 457, 471 (E.D.N .Y.2007) (holding that the New York State Division of Parole was not subject to suit on Eleventh Amendment grounds).

> FN4. *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993) ("The immunity to which a state's official may be entitled in a § 1983 action depends initially on the capacity in which he is sued. To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v.. Negron,* 996 F.2d 1439, 1441 (2d Cir.1993) ( "[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities."); *Farid v. Smith,* 850 F.2d 917, 921 (2d Cir.1988) ("The eleventh amendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he is sued in his 'individual' or 'personal' capacity."); *see also Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 (1989) ( "Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.... As such, it is no different from a suit against the State itself.... We hold that neither a

State nor its officials acting in their official capacities are 'persons' under § 1983."); *Kentucky v. Graham,* 473 U.S. 159, 165–66 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity.").

> FN5. The Court will provide Plaintiff with a copy of this unpublished decision in accordance with the Second Circuit's decision in *LeBron v. Sanders,* 557 F.3d 76 (2d Cir.2009).

Plaintiff has named Defendants Goord and Lemons in their official capacities. (Dkt. No. 1 at 2.) In his opposition papers, Plaintiff does not dispute that Defendants are state officials. *See* (Dkt. No. 20 at 8–15.) Moreover, the complaint requests only monetary damages. (Dkt. No. 1 at 6.) Therefore, the Eleventh Amendment bars Plaintiff's claim for monetary damages against Defendants Goord and Lemons in their official capacities.

Where a *pro se* complaint fails to state a cause of action, the court *generally* "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (internal quotation and citation omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Id.* at 112 (citation omitted). Here the Eleventh Amendment bars Plaintiff's claims and better pleading will not cure them. Accordingly, I recommend that the Court dismiss Plaintiff's claims against the Defendants in their official capacities for monetary damages without leave to amend.

**B. Personal Involvement**

Defendants argue that the complaint fails to allege that either Defendant Goord or Lemons was personally involved in the alleged constitutional violations. (Dkt. No. 15–1 at 3–5.) Although provided the option on his form complaint, Plaintiff failed to specify that either defendant

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 1630727 (N.D.N.Y.)

(Cite as: 2011 WL 1630727 (N.D.N.Y.))

was being sued in his individual capacity. *See* (Dkt. No. 1 at 2.) As discussed above, Plaintiff sued the Defendants only in their official capacities and the complaint is thus barred by the Eleventh Amendment. Assuming, *arguendo,* that Plaintiff had named Defendants in their individual capacities, Defendants are correct that the complaint fails to allege any facts plausibly suggesting that Defendants were personally involved in any alleged constitutional violation.

**\*4** "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)). In order to prevail on a cause of action under 42 U.S.C. § 1983 against an individual, a plaintiff must show some tangible connection between the unlawful conduct and the defendant. *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986). If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct. *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501; *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985). Thus, supervisory officials may not be held liable merely because they held a position of authority. *Wright,* 21 F.3d at 501; *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996). However, supervisory personnel may be considered "personally involved" if:

(1) [T]he defendant participated directly in the alleged constitutional violation;

(2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;

(3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;

(4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or

(5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information

indicating that unconstitutional acts were occurring.

*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (citing *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)).[FN6] Plaintiff lists Defendants in the complaint's caption and parties sections, but provides no further reference to them in the complaint or attachments. *See* (Dkt. No. 1 at 1–22.) Therefore, the complaint lacks sufficient facts to plausibly suggest the Defendants' personal involvement in the alleged constitutional violations and I would recommend dismissal even if Plaintiff had named Defendants in their individual capacities.

FN6. In *Ashcroft v. Iqbal,* ––– U.S. ––––, 129 S.Ct. 1937, 1949 (2009), the Supreme Court ruled that where the underlying constitutional claim is a claim of intentional discrimination, a supervisory official's liability must be judged by the official's purpose rather than the official's knowledge of subordinates' actions or policies. The Second Circuit has not yet issued a decision discussing *Iqbal'* s effect on the *Colon* categories. Several district courts in the Second Circuit have determined that *Iqbal* nullified some of the *Colon* categories. *See Sash v. United States,* 674 F.Supp.2d 531, 543–44 (S.D.N.Y.2009) (collecting cases). I will assume for the purposes of this motion that the *Colon* categories still apply.

Plaintiff should be granted leave to amend to attempt to state claims against the Defendants in their individual capacities. Although the complaint is silent on the Defendants' personal involvement, Plaintiff might be able to plead facts plausibly establishing that the Defendants were personally involved.[FN7] In similar circumstances, courts have found that a plaintiff should be afforded the opportunity to pursue claims not barred by the Eleventh Amendment. *See Oliver Schools, Inc. v. Foley,* 930 F.2d 248, 252 (2d Cir.1991) ("[I]t would have been more appropriate for the court simply to specify that the dismissal extended to all claims against [the state agency] and any claims against the individuals in their official capacities, permitting [plaintiff] to pursue the claims that were not barred by the Eleventh Amendment."); *see also*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 1630727 (N.D.N.Y.)

(Cite as: 2011 WL 1630727 (N.D.N.Y.))

*Duffin v. Wright,* No. 9:08–CV–1342, 2010 WL 598675, *5, 2010 U.S. Dist. LEXIS 14391, *15–16 (N.D.N.Y. Feb. 17, 2010)* (Peebles, Mag.) (recommending that plaintiff who named defendant on a complaint form only in his official capacity be afforded an opportunity to amend his complaint, so that he may pursue damage claims against the defendant in his individual capacity).[FN8] Therefore, I recommend that Plaintiff be granted leave to amend with respect to claims against the Defendants in their individual capacities.

> FN7. The Court does not express an opinion on whether the facts relating to the Defendants, stated in Plaintiff's opposition papers but not plead in the complaint, are sufficient to meet the personal involvement standard. *See* (Dkt. No. 20.)

> FN8. The Court will provide Plaintiff with a copy of this unpublished decision in accordance with the Second Circuit's decision in *LeBron v. Sanders,* 557 F.3d 76 (2d Cir.2009).

**C. Statute of Limitations**

**\*5** Defendants assert that Plaintiff's first claim, that DOCS violated his due process rights by administratively adding two and a half years to his PRS sentence, is time barred. (Dkt. No. 15–1 at 1–2.) I address this argument to determine whether or not allowing Plaintiff to amend his complaint to allege the Defendants' personal involvement would be futile.

Claims arising under 42 U.S.C. § 1983 are governed by state statutes of limitations. *Wilson v. Garcia,* 471 U.S. 261, 266–267 (1985). In New York, such claims are governed by the general three-year statute of limitations period governing personal injury claims. *Owens v. Okure,* 488 U.S. 235, 251 (1989). Accrual of the claim is a question of federal law. *Ormiston v. Nelson,* 117 F.3d 69, 71 (2d Cir.1997). Under federal law, generally, a claim arising under 42 U.S.C. § 1983 "accrues" when the plaintiff "knows or has reason to know of the injury which is the basis of his action." *Pearl v. City of Long Island Beach,* 296 F.3d 76, 80 (2d Cir.2002). However, "[a] § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue

until the conviction or sentence has been invalidated." *Heck v. Humphrey,* 512 U.S. 477, 490 (1994); *Amaker v. Weiner,* 179 F.3d 48, 52 (2d Cir.1999); *Ruffins v. Dep't of Corr. Servs.,* 701 F.Supp.2d 385, 395 (E.D.N.Y.2010). PRS is a part of a prisoner's sentence and "[t]he fact that [the] term was added administratively, rather than judicially, does not render it a separate component from plaintiff's sentence and thus beyond the reach of *Heck.*" *Ruffins,* 701 F.Supp.2d at 396.

The complaint alleges that on or about January 10, 2002, DOCS violated Plaintiff's constitutional due process rights by administratively adding two and a half years to his PRS term. (Dkt. No. 1 at 5.) Defendants argue that because this occurred in 2002, the statue of limitations expired before Plaintiff filed this action on September 8, 2009. (Dkt. 15–1 at 2–3.) Defendants also state that "[P]laintiff does not allege that any toll is applicable to his first claim." *Id.* at 2. The complaint and attachments are silent regarding when Plaintiff first learned that time had been added to his original PRS term. *See* (Dkt. No. 1 at 1–22.)

However, Plaintiff's claim accrued when the excess PRS term was invalidated, not when he knew or should have known of the violation. *Amaker,* 179 F.3d at 52 ("[W]here the viability of the plaintiff's claim depends on his conviction being invalidated, the statute of limitations begins to run upon the invalidation, not the time of the alleged government misconduct."); *Ruffins,* 701 F.Supp.2d at 395 (holding that the plaintiff's cause of action did not accrue until a state court re-sentencing invalidated his administratively imposed PRS term). Here Plaintiff's complaint alleges that he "[f]iled [a] [w]rit of [h]abeas [c]orpus, subsequently [the] excess term illegally imposed by DOCS was vacated ." [FN9] (Dkt. No. 1 at 5, 6.) The writ petition was filed on March 3, 2009. *Id.* at 9. On July 20, 2009, the Division sent a letter to Niagara County Jail confirming that Plaintiff was to be discharged pursuant to court order. *Id.* at 22. Therefore, Plaintiff's claim accrued in 2009, his complaint is timely, and amendments to it would not be futile on statute of limitations grounds.

> FN9. A copy of the disposition of the writ of habeas corpus action was not included as an attachment to the complaint. (Dkt. No. 1.)

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 1630727 (N.D.N.Y.)

(Cite as: 2011 WL 1630727 (N.D.N.Y.))

However, the Court must accept the material facts alleged in the complaint as true. *Hernandez, 18 F.3d 133, 136 (2d Cir.1994)* (citation omitted).

**\*6 ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 15) be ***GRANTED*** with prejudice with respect to Defendant Goord and Defendant Lemons in their official capacities, but with leave to amend with respect to Defendant Goord and Defendant Lemons in their individual capacities; and it is further

**ORDERED** that the Clerk provide Plaintiff with copies of *Tolliver v. N.Y. State Correctional Officers,* No. 99 CIV 9555, 2000 WL 1154311 (S.D.N.Y. Aug. 14, 2000); and *Duffin v. Wright,* No. 9:08–CV–1342, 2010 WL 598675, 2010 U.S. Dist. LEXIS 14391 (N.D.N .Y. Feb. 17, 2010) in accordance with the Second Circuit's decision in *LeBron v. Sanders,* 557 F.3d 76 (2d Cir.2009).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72.

N.D.N.Y.,2011.

Price v. Goord
Not Reported in F.Supp.2d, 2011 WL 1630727 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp., 1997 WL 599355 (N.D.N.Y.)

(Cite as: 1997 WL 599355 (N.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,
v.
Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln
Work-Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John Doe # 1,
Parole Agent, Watertown Correctional Facility; John
Doe # 2, Parole Agent, Lincoln Work Release Center;
Susan Bishop, Director of Interstate Compact, South
Carolina; Cecil Magee, Parole Officer, South Carolina;
Frank Barton, Parole Officer, South Carolina; John
McMahan, Parole Officer, South Carolina, Defendants.
No. Civ.A. 95CV1641RSPDS.

Sept. 22, 1997.
Kenneth Brown, State Court Institute-Greene,
Waynesburg, PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol Albany, NY, for defendants Peters, Herman
Stewart, Doe # 1, Doe # 2, and Williams, Jeffrey M.
Dvorin, Assistant Attorney General, Carl N. Lundberg,
Chief Legal Counsel, South Carolina Department of
Probation, Columbia, SC, for defendants Bishop, Magee,
Barton, McMahan, and Stanford, Carl N. Lundberg, of
Counsel.

DECISION AND ORDER

POOLER, J.

**\*1** The above matter comes to me following a
Report-Recommendation by Magistrate Judge Daniel
Scanlon, Jr., duly filed on April 17, 1997. Following ten
days from the service thereof, the Clerk has sent me the
entire file, including any and all objections filed by the
parties herein.

Plaintiff Kenneth Brown commenced this Section

1983 civil rights action on November 17, 1995. On
February 12, 1996, Magistrate Judge Scanlon ordered
Brown to submit an amended complaint alleging the
specific acts committed by the individuals named as
defendants which Brown claimed violated his
constitutional rights. Brown filed an amended complaint
on March 21, 1996. In his amended complaint, Brown
alleged that defendants violated his rights under the Eighth
and Fourteenth Amendments by failing to process properly
his interstate compact paperwork, resulting in Brown
being imprisoned pursuant to a parole hold when in fact he
had never violated the conditions of his parole. For a more
complete statement of Brown's claims, see his amended
complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams
made a motion to dismiss for failure to state a claim
pursuant to Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No.
14, at 2. On August 19, 1996, defendants Bishop, Magee,
Barton, and McMahan made a motion to dismiss the
complaint against them or, in the alternative, for summary
judgment. Dkt. No. 20. On October 17, 1996, defendants
Herman, Stewart, and Stanford made a motion to dismiss
for failure to state a claim. Dkt. No 34. On April 17, 1996,
Magistrate Judge Scanlon recommended that all
defendants' motions to dismiss be granted and that the
complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the
magistrate judge's report-recommendation, having been
granted additional time in which to do so. Dkt. No. 52. In
addition, Brown filed on June 9, 1997, a motion for leave
to file a second amended complaint and a copy of his
proposed amended complaint. Dkt. No. 53. I turn first to
the last motion filed, Brown's motion for leave to amend
his complaint a second time.

Brown seeks to file a second amended complaint
"setting forth in detail the personal involvement of each
defendant and how their acts of commission and omission
served to deprive plaintiff of Constitutionally secured
rights." Dkt. No. 53. The district court has discretion
whether to grant leave to amend. *Ruffolo v. Oppenheimer*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 599355 (N.D.N.Y.)

(Cite as: 1997 WL 599355 (N.D.N.Y.))

& Co., 987 F.2d 129, 131 (2d Cir.1993). In exercising that discretion, the court should freely grant leave to amend when justice so requires. Fed.R.Civ.P. 15(a). However, the court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile. Ruffolo, 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional allegations against the named defendants. However, the additional allegations fail to cure the deficiency which forms the basis of defendants' motion to dismiss-the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 886 (2d Cir.1987).

**2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." Smiley v. Davis, 1988 WL 78306, *2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to

allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo* determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. See Camardo v. General Motors Hourly-Rate Employees Pension Plan, 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); Chambrier v. Leonardo, 1991 WL

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 599355 (N.D.N.Y.)

(Cite as: 1997 WL 599355 (N.D.N.Y.))

44838, *1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); *Schoolfield v. Dep't of Correction,* 1994 WL 119740, *2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); *Vargas v. Keane,* 1994 WL 693885, *1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also Scipio v. Keane,* 1997 WL 375601, *1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P. 72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation").

**\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous.[FN1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

> FN1. I note, however, that the report-recommendation would survive even *de novo* review.

### CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

### ORDER and REPORT-RECOMMENDATION

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim*.

### BACKGROUND

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1-2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

**\*4** Plaintiff, meanwhile, asked Reid whether any

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 599355 (N.D.N.Y.)

(Cite as: 1997 WL 599355 (N.D.N.Y.))

officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5-7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams, the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992, upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8-10.

In February, 1993, plaintiff was arrested on robbery

charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11-14; Exs. C-J.

*5 Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15-17; Exs. F-I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. See LaBounty v. Adler, 933 F.2d 121, 122 (2d Cir.1991) (citing Ortiz v. Cornette, 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 599355 (N.D.N.Y.)

(Cite as: 1997 WL 599355 (N.D.N.Y.))

necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595-96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dismiss should be granted.

B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

C. Motion to Dismiss by Herman, Stewart and Stanford.

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 599355 (N.D.N.Y.)

(Cite as: 1997 WL 599355 (N.D.N.Y.))

constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. *Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

D. Plaintiff's "John Doe" Claims.

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.
E. Discovery Motions.

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

## CONCLUSION

WHEREFORE, based upon the foregoing analysis, it is hereby
ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart

and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

N.D.N.Y.,1997.

Brown v. Peters
Not Reported in F.Supp., 1997 WL 599355 (N.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.